IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 16-00475-SOM-01 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | CHRISTOPHER ABEL NIETO'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| vs. | ) | |
| | ) | |
| CHRISTOPHER ABEL NIETO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT CHRISTOPHER ABEL NIETO'S
MOTION FOR COMPASSIONATE RELEASE**

I.          INTRODUCTION.

In 2016, this court sentenced Defendant Christopher Abel Nieto to 168 months of incarceration, five years of supervised release, and a $100 special assessment on one count of having conspired to distribute and possess with intent to distribute 500 grams or more of methamphetamine.  *See* ECF No. 87.  Nieto is incarcerated at the minimum security satellite camp at USP Atwater.  He has served approximately 58 months of his sentence and has a projected release date of June 25, 2028.  *See* ECF No. 118-1, PageID # 577.

Nieto moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The primary basis for his motion is the COVID-19 pandemic.  Nieto contends that several underlying medical conditions make him vulnerable to severe complications if he contracts COVID-19.  After considering Nieto's medical

conditions, the time remaining on his sentence, and his history, this court concludes that he has not demonstrated that extraordinary and compelling circumstances warrant a reduction in his sentence.

**II.      ANALYSIS.**

Nieto's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence

2

reduction; and (3) find that such a reduction is consistent with Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion). *See United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Nieto Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

Nieto submitted an administrative compassionate release request to the warden of his prison, who denied that request more than 30 days before the filing of this motion. *See* ECF No. 111-4, PageID # 532. The Government concedes that Nieto has therefore satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 122, PageID # 665.

### B. This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended

3

policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

        Recently, the Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not

4

applicable policy statements that are binding on this court, they may inform this court's discretion. *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

> **C. Nieto Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release, or That the Requested Reduction Would Be Consistent with Any Applicable Sentencing Commission Policy Statement.**

Nieto contends that this court should exercise its discretion and find that extraordinary and compelling circumstances justify his early release. He relies primarily on the risks he faces if he contracts COVID-19, which is present at USP Atwater, where he is housed. While the court acknowledges the seriousness of Nieto's concerns, the COVID-19 pandemic does not justify early release at this time.

According to Nieto, he suffers from several conditions that may present particular risks relating to COVID-19, including obesity (Nieto is overweight, with a BMI of 28.1), hypertension, a history of smoking, a history of substance abuse, and a heart murmur.[1] ECF No. 118, PageID # 549-550, 556-562; *see also* ECF No. 128, PageID # 748. Under the CDC's guidance, some of those

---

[1] The only reference to a heart murmur in the record is a statement in the Presentence Report that "the defendant stated that he was diagnosed with a heart murmur, which causes him occasional pain, but he is not currently receiving treatment for this condition." ECF No. 76, PageID # 378. While Nieto posits that his heart murmur may indicate that there is a problem affecting one of his heart valves, ECF No. 118, PageID # 561-62, there is nothing in the record to support that speculation.

5

conditions may increase his risk of a severe illness if he contracts COVID-19.[2]  However, Nieto is 42 years old; his age does not place him in the highest risk category.  While this court certainly agrees that Nieto has legitimate concerns about contracting COVID-19, his medical conditions, standing alone, are not exceptional and compelling reasons that warrant a reduction in sentence.

Several factors mitigate the risks that Nieto faces.  Most significantly, in March 2021, Nieto tested positive for COVID-19.  ECF No. 121, PageID # 619.  He admits that his symptoms were "mild."  ECF No. 118, PageID # 550.  That raises two issues.  First, because he did not develop serious complications during his March infection, it is not clear that he is likely to develop such complications if reinfected.

Second, although it is possible, it is unlikely that Nieto will be infected a second time.  The CDC has acknowledged that while "[c]ase of reinfection with COVID-19 have been reported, [they] remain rare."  https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited May 13, 2021).  While this court is in no position to make a definitive determination about immunity, the combination of Nieto's lack of complications after testing positive and the possibility of some

---

[2]  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 13, 2021).

form of immunity cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

Moreover, USP Atwater houses 848 inmates, with 85 inmates in its satellite camp.  *See* https://www.bop.gov/locations/institutions/atw/ (last visited May 13, 2021).  As of the morning of May 13, 2021, USP Atwater and its camp had no active cases of COVID-19 in its inmate population and two active cases of COVID-19 in its staff.  USP Atwater and its camp have had 369 inmates and 63 staff members recover from COVID-19.  No inmates or staff have died at the facility.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited May 13, 2021).  Those numbers demonstrate that USP Atwater at one time had a significant COVID-19 problem.  Its COVID-19 problem has been reduced but certainly not eliminated.  Nevertheless, the relatively low number of current COVID-19 cases does not place Nieto at great risk of exposure to COVID-19, even if he is in a camp where social distancing is difficult.

Finally, the court notes that the COVID-19 vaccination process at USP Atwater has begun, with 152 staff and 218 inmates having been fully vaccinated.  *See* https://www.bop.gov/coronavirus (last visited May 13, 2021).  The record does not indicate when a vaccination will be offered to Nieto, but it is reasonable to expect that he will have the opportunity to be

7

vaccinated at some point in the near future. If he receives a vaccine, he will become far less likely to be infected by COVID-19 or to suffer serious complications if infected. *See, e.g.*, Berkeley Lovelace Jr., *Pfizer Covid Vaccine Blocks 94% of Asymptomatic Infections and 97% of Symptomatic Cases in Israeli Study*, CNBC, March 11, 2021, https://www.cnbc.com/2021/03/11/pfizer-covid-vaccine-blocks-94percent-of-asymptomatic-infections-and-97percent-of-symptomatic-cases-in-israeli-study.html; Alex Knapp, *Lab Study Suggests Pfizer/BioNTech Vaccine Effective Against Variants After Second Dose*, Forbes, March 8, 2021, https://www.forbes.com/sites/alexknapp/2021/03/08/lab-study-suggests-pfizerbiontech-vaccine-effective-against-variants-after-second-dose/?sh. The possible availability of the vaccine in the near future is therefore not something that this court can ignore in ruling on Nieto's compassionate release request.

In evaluating whethis early release is justified, this court also must consider the factors set forth in § 3553(a). Several of those factors weigh against a finding that extraordinary and compelling circumstances justify Nieto's early release. Two considerations are particularly relevant. The first is the amount of time Nieto has served. Nieto has served 58 months of his sentence, with a projected release date of June 25, 2028. He has not yet completed half of his sentence.

Nieto contends that, under today's sentencing regime, he may have received a shorter sentence. He argues that he only agreed to a Rule 11(c)(1)(C) sentence of 168 months because that plea agreement allowed him to avoid a mandatory 240-month sentence or a mandatory life sentence under provisions of the First Step Act that have since been repealed. ECF No. 118, PageID # 564-69. However, in Nieto's case, the guidelines recommended a sentence of between 135 and 168 months. ECF No. 76, PageID # 381. Even if the court assumes both that Nieto would not have agreed to a Rule 11(c)(1)(C) sentence under today's law and that he would have received a sentence at the bottom of his guidelines range, he still would have had to serve 135 months in prison. He has only completed 58 months. Even if Nieto would have received a shorter sentence under today's law, this would not be a case where he would be on the eve of release.

Second, the court considers Nieto's criminal history, which includes two prior convictions involving the sale of methamphetamine, another conviction for possession of methamphetamine, a conviction for insurance fraud, and, most significantly, a conviction for attempting to intimidate a witness in a rape case in 2000. ECF No. 76, PageID # 371-74. That history gives this court some pause.

It is true that, as Nieto argues, he has made numerous attempts to rehabilitate himself while imprisoned. *See* ECF No.

9

118, PageID # 571-73.  However, under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having considered the amount of time remaining on Nieto's sentence, his history, and the totality of the medical information he has submitted, this court determines that the reasons raised by Nieto do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence.

**III.    CONCLUSION.**

Nieto's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, May 13, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Nieto*, Cr. No. 16-00475-SOM-01; ORDER DENYING CHRISTOPHER ABEL NIETO'S MOTION FOR COMPASSIONATE RELEASE